# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| United States of America | ) | CASE NO. 1:06-cv-2927 |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| Kenneth Harchar, and | ) | **JUDGE PATRICIA A. GAUGHAN** |
| Andrea Harchar | ) | |
| | ) | |
| **Appellees** | ) | |
| | ) | |
| | ) | **Memorandum of Opinion and Order** |
| | ) | |

## INTRODUCTION

Currently before the Court is Appellant the United States of America's appeal of the

Bankruptcy Court's decision denying in part Appellant's motion to dismiss and alternative

motion for summary judgment regarding the adversary complaint of Appellees/Debtors Kenneth

and Andrea Harchar (BD# 141-42).[1]  At issue here are Appellees' claims that the Internal

Revenue Service ("IRS") violated the automatic stay provisions of Section 362 of the

Bankruptcy Code, 11 U.S.C. § 362, by placing an administrative freeze on payment of

Appellees' postpetition tax overpayment and taking other actions that delayed Appellees' receipt

---

[1]     This is an appeal from adversary proceeding No. 00-1184, which is
        related to Chapter 13 bankruptcy proceeding No. 98-13277.

1

of the overpayment amount.   For the following reasons, the decision of the Bankruptcy Court is

Affirmed.

### BACKGROUND[2]

Debtors filed a petition for Chapter 13 bankruptcy in 1998.  Included among the

scheduled debts was a $6,200 unsecured debt to the IRS.  The IRS filed a proof of claim which

included a $353 priority tax claim and a general unsecured tax claim of $6,335.  The plan

eventually confirmed by the Bankruptcy Court provided for full payment of the priority tax

claim and 5% payment of all unsecured claims, including the unsecured tax claim.

At some point after the 1998 bankruptcy filing the IRS placed an administrative freeze on

all automated activity involving the Debtors.[3]  Thus, the Debtors did not automatically receive a

refund on their 1999 return for overpayment and instead had to repeatedly ask the IRS for the

overpayment.[4]  The IRS refused, and approximately seven weeks after it became aware of the

overpayment, filed a motion with the Bankruptcy Court to modify the plan such that the refund

---

[2]     Unless otherwise noted, the Background includes allegations from
        Appellees' Third Amended Complaint and the record of
        proceedings before the Bankruptcy Court.

[3]     The IRS submitted the declaration of Fred Yellon, which provides
        a number of justifications for the freeze as a matter of general IRS
        policy.  The freeze is implemented when a taxpayer is involved in
        bankruptcy proceedings and essentially stops all automated
        activity.  In many cases this helps to comply with the bankruptcy
        stay by preventing automated collection activity and automated
        setoffs.

[4]     It is undisputed that the 1999 overpayment was a postpetition
        payment and thus would not be subject to setoff against the
        prepetition unsecured debt.

2

would be used to increase payments to unsecured creditors such as the IRS.[5]  The Debtors
responded that they were providing all of their disposable income into the plan.  The IRS then
withdrew its motion and refunded the 1999 overpayment in July of 2000.[6]

While the motion of the IRS was pending, but prior to the actual repayment, the Debtors
filed an Adversary Complaint against the IRS alleging, *inter alia*, that the actions of the IRS
were in violation of federal law.  Thereafter, in 2001, the Debtors filed separate returns seeking
refunds for the 2000 tax year.  The automatic transactions were again frozen and the IRS delayed
a number of months in providing the refunds.[7]  With respect to Mr. Harchar, the IRS performed
an audit of the return to assess whether his dependent claims were proper.  The IRS ultimately
provided the full refund in November of 2001.[8]  With respect to Mrs. Harchar, the IRS delayed
payment until June 2001 while it determined whether the Debtors' dependent claims were

---

[5]    The Debtors allege, and the IRS does not dispute, that the IRS has
the ability to adjust the freeze such that overpayment transactions
can be automatically processed.  The Yellon declaration claims
that this may be against the government's interests such as where
the overpayment is for a prepetition tax year or where payment
should be made to a trustee rather than a debtor.  The Yellon
declaration also asserts that the Cleveland IRS office regularly
screens for postpetition refund claims by chapter 13 debtors to
decide whether to manually issue a refund or file a motion with the
court.

[6]    The Yellon declaration provides further reasons—not applicable to
the Debtors' returns—that the IRS might wish to delay repayment.
These include that the IRS may want to check if the debtor has
defaulted on a plan or if a plan had not been approved.

[7]    The IRS claims that its counsel told the Debtors' counsel to
provide notice that the returns were being filed.

[8]    The IRS again faults the Debtors' counsel by claiming that the
delay resulted from the failure of Debtors' counsel to provide
certain information to the IRS.

3

inconsistent.

Finally, the Debtors also allege that Mrs. Harchar called the IRS to inquire about the status of her delayed refund and was told that she did not deserve a refund and that the IRS was applying it to her prepetition tax liability.

The adversary proceedings continued for a number of years and the Debtors eventually filed a Third Amended Complaint on February 15, 2006 (BD# 122). The IRS responded with a "Motion to Dismiss Adversary Proceeding (or at Least Partially Dismiss) or for Summary Judgment, and to Rule on this Motion before Ruling on Discovery Disputes." (BD# 125). The Bankruptcy Court granted the motion in part and denied the motion in part. First of all, the Bankruptcy Court declined to convert the motion into a motion for summary judgment, and thus refused to consider certain matters outside of the Third Amended Complaint. With respect to the merits, the Bankruptcy Court dismissed "[t]he debtors' claims for due process, for declaratory relief, and for injunctive relief for lack of subject matter jurisdiction under civil rule 12(b)(1) and the debtors' claims for violation of bankruptcy code §§ 525(a) and 1327 . . . under civil rule 12(b)(6) for failure to state a claim upon which relief can be granted." (BD# 141). The Bankruptcy Court did not grant the motion as to the Debtors' claims that the IRS freeze resulted in violations of 11 U.S.C. §§ 362(a)(3) & 362(a)(6).

The IRS filed a motion for leave to appeal the decision. (Doc. 2). The motion was unopposed and granted by the Court. Now before the Court are the following issues for appeal:

1. **§ 362(a)(3).** Does the refusal to pay a debt control any "property" of the claimant and, if so, is that property "property of the estate" where the claimed property is a tax refund owed to a debtor whose Chapter 13 plan is confirmed, for a tax year ending after confirmation of the plan, where the plan does not provide for tax refunds to be used to fund payments to the Chapter 13 trustee for estate administration and distribution among

4

creditors?

2.   **§ 362(a)(6).**  Does the fact that one of the reasons the IRS shuts down computer-automated refunding of tax overpayments to bankruptcy debtors is to preserve the ability to file a motion (where appropriate) either to offset prepetition overpayments against prepetition tax claims or to have postpetition overpayments be paid to a trustee for distribution partly back to the IRS, mean that the computer freeze code is an "act to collect" a prepetition debt in violation of § 362(a)(6).  If the answer to this is no, does it become a violation because an IRS employee mistakenly tells a debtor that the IRS is going to apply a postpetition tax overpayment to a prepetition claim where no such offset i[s] done, and the IRS instead files a motion to turn the refund over to the Chapter 13 trustee for administration?

## STANDARD OF REVIEW

A district court reviewing a bankruptcy court's decision on matters of law must apply a *de novo* standard of review.  *Lutz v. Chitwood*, 337 B.R. 160, 168 (S.D. Ohio 2005) (citing *In re Caldwell*, 851 F.2d 852, 857 (6th Cir. 1988)).  The sufficiency of a complaint is a matter of law. *Id.* (citing *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1104 (6th Cir. 1995)).

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff.  *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). A claim is not to be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also Hammond v. Baldwin,* 866 F.2d 172, 175 (6th Cir. 1989).  Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.  However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993).  "[A] court is not required to accept as true

5

unwarranted legal conclusions and/or factual allegations." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 327 (6th Cir. 2006).

### **DISCUSSION**

Summary Judgment

The IRS first faults the Bankruptcy Court for declining to convert its 12(b)(6) motion into a motion for summary judgment.  As the Bankruptcy Court noted, the IRS did not state the Rule 56 standards or argue under those standards.  The Court concurs, and notes that the IRS explicitly moved under 12(b)(6) and requested that the Bankruptcy Court convert the motion to a summary judgment motion as permitted under that rule.  The Bankruptcy Court declined to do so in a separate docket entry.  Accordingly, the only issue is whether the Bankruptcy Court properly declined to convert the motion to a summary judgment motion under Rule 12(b).

A court's decision on whether to convert a motion to dismiss into a motion for summary judgment is reviewed for an abuse of discretion.  *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004); *Backer v. Manning Family Trust*, 51 Fed. Appx. 522, 529 (6th Cir. Oct. 22, 2002) (applying the same standard to a bankruptcy court).  The IRS generally argues that this case has been ongoing for a long period of time and that there is little discovery left to complete.  However, the IRS fails to cite any relevant authority or explain how the failure to convert the motion amounts to an abuse of discretion under these circumstances.  Accordingly, the Court finds that the Bankruptcy Court's refusal to convert the motion was not an abuse of discretion.

Section 362(a)(3)

The IRS claims that the Bankruptcy Court erred in denying its motion to dismiss the Debtors' claim under Section 362(a)(3), which imposes a stay of "any act to obtain possession of

6

property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).  The IRS makes two main arguments that this claim must fail as a matter of law.  First, according to the IRS its failure to pay a tax refund does not control any property.  Second, the IRS believes that to the extent that anyone has a property right in an unpaid tax refund it is the right of the Debtors, not the estate as required under Section 362(a)(3).

The first argument is based on the Supreme Court case of *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995). The *Strumpf* Court considered whether a bank was liable to its customer, in bankruptcy at the time, for a breach of the Section 362(a) stay for placing a hold on the customer's checking account.  *Id.* at 17.  The bank did so in order to prepare and assert a setoff claim before the bankruptcy court.  The Supreme Court first decided that Section 362(a)(7) prohibiting setoffs was not violated because the bank simply filed a motion for a setoff, but did not take the setoff.  *Id.* at 19-20.  The debtor claimed in the alternative that the bank, by merely holding the amounts in the debtor's checking account, was attempting to obtain possession of or control the debtor's property under Section 362(a)(3).  *Id.* at 21.  The Supreme Court reasoned as follows in rejecting that argument:

> Respondent's reliance on these provisions rests on the false premise that petitioner's administrative hold took something from respondent, or exercised dominion over property that belonged to respondent. That view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank. In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor, *see Bank of Marin v. England*, 385 U.S. 99, 101, 17 L. Ed. 2d 197, 87 S. Ct. 274 (1966); *Keller v. Frederickstown Sav. Institution*, 193 Md. 292, 296, 66 A.2d 924, 925 (1949); and petitioner's temporary refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise.

*Id*.

7

The IRS argues that *Strumpf* stands for the principle that an obligor's refusal to pay a debt does not control any property belonging to the claimant.  It contends that the Bankruptcy Court misconstrued its argument as an argument that "tax refunds are not property."  According to the IRS, "[t]ax refunds most certainly are property."  Its "argument is that the refusal to refund a tax overpayment does not control property because the government's unappropriated funds in its own Treasury are not property of any taxpayer, regardless of a claim for tax refund."

The Court concludes that the Bankruptcy Court addressed the issue correctly.  Simply put, the reason the bank in *Strumpf* did not run afoul of Section 362(a)(3) was because it did not have any property of the depositor's to control or possess.  *See Calvin v. Wells Fargo Bank, N.A.*, 329 BR. 589, 603 (Bankr. S.D. Tex. 2005) (explaining that a freeze on a bank account does not violate Section 362(a)(3) because the account is merely "a promise to pay"); *Holden v. U.S.*, 236 B.R. 156, 163 (Bankr. D. Vt. 1999) (explaining that "the property being controlled was not estate property"); *In re Nat'l Envtl. Waste Corp.*, 191 B.R. 832, 836 (Bankr. C.D. Cal. 1996) (explaining that *Strumpf* "rested not on a limitation of the scope of Section 362(a)(3), but on its finding that the action at issue did not deprive the estate of property").  However the argument is framed, the aspect of the *Strumpf* ruling relied upon by the government boils down to whether the property involved in the freeze—here an unpaid tax refund—is property of the estate.[9]

It is at this point that the *Strumpf* analogy breaks down.  Courts to directly address the issue post-*Strumpf* have held that an IRS freeze on an unpaid postpetition tax refund amounts to

---

[9]     The issue of whether the property at issue in this case is property of the estate or Debtors is discussed below with respect to the government's second argument.  What matters in response to the government's first argument is that the unpaid tax refund is the property of someone other than the government.

a freeze on property of the estate, *Holden*, 236 B.R. at 163-64, and authority cited by the IRS is

not persuasive.[10]  As the Bankruptcy Court explained, many courts have treated a tax or similar

refunds as the property of the estate or debtor.  *See Segal v. Rochelle,* 382 U.S. 375, 380 (1966)

(holding that a loss-carryback refund is property under the Bankruptcy Act); *Johnston v. Hazlett*,

209 F.3d 611, 613 (6th Cir. 2000) (holding that earned income tax credits are property of the

estate); *Williams v. Johnson*, 1995 U.S. App. LEXIS 12800, * (6th Cir. May 24, 1995) (holding

that an unpaid Department of Energy refund is property of the estate).  Although the IRS

attempts to find fault with these cases,[11] the Court notes that "property" is afforded a broad

meaning in the bankruptcy context and the Supreme Court has long characterized a taxpayer or

---

[10]     The IRS cites *Brockelman v. Brockelman*, 478 F. Supp. 141, 144
(D. Kan. 1979), for the proposition that "the money in the hands of
the IRS is the money of the United States, and remains the money
of the United States until paid over to the person entitled to it."
That case, however, does not support an analogy to the bank
account of *Strumpf*.  Indeed, the *Brockelman* court acknowledged
"the fact that an income tax refund may be property of the taxpayer
within the meaning of the Bankruptcy Act . . . ." *Id*. at 144.  The
issue in *Brockelman* was whether this fact mattered for sovereign
immunity purposes.  The IRS also notes that the *Holden* case
involved different factual circumstances related to the duration of
the freeze and the freeze procedures employed by the local IRS
office.  This simply demonstrates that courts must look to the
particular allegations in each case to determine whether control has
been exercised over the property, which is discussed in more detail
*infra*.

[11]     For example, most cases involve a dispute as to whether the tax
refund is property of the debtor or estate.  According to the IRS, a
number of these cases are really just disputes over who has a claim
to the tax return.  This analysis misses the point.  So long as the
underlying tax return (unlike the account balance in *Strumpf*) is
property, so too is a claim to that property under the bankruptcy
code.  *See* 11 U.S.C. § 541(a)(1).

estate's rights to a tax refund as a species of property.  *Kokoszka v. Belford*, 417 U.S. 642, 648 (1974) (concluding "that the Court of Appeals correctly held that the income tax refund is . . . 'property'" under the Bankruptcy Act); *Segal*, 382 U.S. at 380 (holding that a loss-carryback refund is property under the Bankruptcy Act).  The *Strumpf* Court, on the other hand, was faced with Supreme Court authority to the effect that a depositor's right to deposited funds is merely contractual in the bankruptcy context.  *Strumpf*, 516 U.S. at 21 (citing *Bank of Marin v. England*, 385 U.S. 99, 101 (1966)).  Although the Court finds no reason to dispute or minimize the holding of *Strumpf*,[12] it simply does not agree that it applies to the unpaid tax refund at issue here.  Accordingly, the Court concludes that the Bankruptcy Court was correct in concluding that the unpaid tax refund is property for purposes of Section 362(a)(3).

The Bankruptcy Court also correctly addressed the related issue of "control" or "possession" of property.  The IRS apparently reads *Strumpf* as creating a *per se* rule that any

---

[12]     Some courts have used the excerpt quoted in the next block quotation below (516 U.S. at 21) to explain away the property aspect of the *Strumpf* Court's Section 362(a)(3) holding as dicta.  *Jimenez v. Wells Fargo Bank, N.A.,* 335 B.R. 450, 458 (Bankr. N.M. 2005).  The instinct is understandable, since a narrow reading of "property of the estate" could exempt a good deal of property from the automatic stay.  However, the Court finds that this dilemma is better handled by recognizing the unique context of *Strumpf* and requiring compelling circumstances to expand *Strumpf* outside of that context.  *See Holden*, 236 B.R. at 163 (explaining that "we should construe Strumpf's holding narrowly"); *Calvin v. Wells Fargo Bank, N.A.,*329 B.R. 589, 603 (Bankr. S. D. Tex. 2005) (applying *Strumpf* to a bank account).  *But see Mountaineer Coal Co. v. Liberty Mut. Ins. Co.*, 247 B.R. 633, 643-44 (Bankr. W.D. Va. 2000) (applying *Strumpf* to amounts owed under an insurance policy).  Even the *Jiminez* decision involved a situation where there was no right of setoff, and was thus not directly on point with *Strumpf*.  335 B.R. at 459.

10

freeze of a money obligation does not amount to control or possession of property under Section 362(a)(3).  To the extent that *Strumpf* can be read as addressing control or possession, its reach is much more limited.  First, the Supreme Court stated that "petitioner's *temporary* refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise."  *Strumpf*, 516 U.S. at 21 (emphasis added). The "temporary" delay of *Strumpf* lasted only five days.  Moreover, the Court allowed a temporary freeze only to protect the statutory setoff rights of the bank:

> In any event, we will not give § 362(a)(3) or § 362(a)(6) an interpretation that would proscribe what § 542(b)'s "exception" and § 553(a)'s general rule were plainly intended to permit: the temporary refusal of a creditor to pay a debt that is subject to setoff against a debt owed by the bankrupt.

*Strumpf*, 516 U.S. at 21.  In sum, as the Bankruptcy Court explained, *Strumpf* provides little guidance on the control issue beyond its peculiar facts.[13]  As the Bankruptcy Court noted, the following facts are alleged here:

> In this case, the debtors' factual allegations include these: the debtors filed a

---

[13]      The IRS describes the Bankruptcy Court's opinion as "adopting the analysis in In re Jiminez," 335 B.R. 450, 457-59 (Bankr. N.M. 2005), and then faults the *Jiminez* Court for treating *Strumpf's* 362(a)(3) discussion as dicta.  The Court disagrees for a number of reasons.  First, the Bankruptcy Court did not adopt *Jiminez*, but merely cited *Jiminez* as an example of a Court distinguishing *Strumpf* on the basis that there was no setoff—something *Jiminez* did.  *See id*. at 359 (stating that "[t]his case presents a separate issue: whether a depository bank, without a right of setoff can freeze funds in a Chapter 7 debtor's bank account").  Second, the *Jiminez* Court's dicta discussion had to do with the "property" issue of whether a bank account was property under 362(a)(3).  *Id*. at 458.  Although the Court agrees with the IRS that *Strumpf's* discussion of the property issue was not dicta, that does not mean that the *Jiminez* Court's discussion of the control issue is flawed, or that the Bankruptcy Court erred by citing *Jiminez* for that issue.

chapter 13 case; they proposed a chapter 13 plan which ultimately was confirmed; the refunds became due postpetition; the IRS did not tell the debtors it had frozen their refunds; the IRS did not have any procedures in place to explain to the debtors why their refunds had been frozen or how to challenge the freeze; the IRS did not respond to the debtors' repeated efforts to find out what had happened to their refunds; the IRS told Andrea Harchar that she did not deserve a refund; the IRS told Andrea Harchar that it would not release her refund because the IRS was going to apply it to her prepetition debt; the IRS did not file a motion for relief from stay to apply the refund in that fashion; and the IRS delayed seven weeks before filing a motion to modify the debtors' plan, which the IRS later withdrew.

(Doc. 141, p.18.

Other courts have had done little to provide guidance on the control issue either. *See In re Albion Disposal, Inc.*, 217 B.R. 394, 405 (W.D.N.Y. 1997) (explaining that while the statute leaves control undefined, "[f]or the most part, courts have construed that provision broadly"); *In re Allentown Ambassadors*, 2007 Bankr. LEXIS 267, * 37 (Bankr. E.D. Pa. Feb. 5, 2007) (explaining that "§ 362(a)(3) case law involving acts 'to exercise control' over intangible property of the estate may not be entirely consistent in their reasoning and outcome").  Although the Sixth Circuit has addressed the issue generally, it has failed to provide any explicit standard to follow.  *See Javens v. City of Hazel Park*, 107 F.3d 359, 367-70 (6th Cir. 1997).  Accordingly, the foreign cases with different facts cited by the IRS do not establish *per se* rules as the IRS contends.  *See, e.g., In re Mountaineer Coal*, 247 B.R. at 642-44 (finding no violation of the automatic stay where an insurance company failed to pay a partial refund of premiums in a timely manner); *United States v. Inslaw*, 932 F.2d 1467, 1472 (D.C. Cir. 1991) (holding that where parties have a legitimate dispute over ownership of the property at issue there is no automatic stay violation).  For every case with arguably similar circumstances that found no 362(a)(3) violation, another similar case with slightly different facts did result in a violation. *See, e.g., Holden*, 258 B.R. at 327 (holding that the IRS freeze violates the automatic stay).  The

12

Court thus agrees with the Bankruptcy Court's conclusion  that "any meaningful analysis of the case law on this issue (both as cited by the IRS and as cited by the debtors) will require consideration of the relevant facts, an exercise outside the scope of a 12(b)(6) motion."[14]

The final contention of the IRS with respect to the 362(a)(3) claim is that any property that was controlled by the IRS was property of the Debtors, not the estate.  The Bankruptcy Court held that it could not decide the issue at the motion to dismiss stage, because even accepting the legal arguments of the IRS it would be required to consider the Debtors' chapter 13 plan, which is outside of the pleadings.  Although the Court disagrees with the Bankruptcy Court's conclusion that it could not review the Debtors' chapter 13 plan, the Bankruptcy Court's denial of the motion to dismiss will be affirmed for other reasons stated below.

The Court agrees with the IRS that the chapter 13 plan can be considered at the motion to dismiss stage.  The Bankruptcy Court refused to consider the plan because "[t]he debtors' chapter 13 plan is outside the scope of the pleadings and the court has specifically declined to convert the motion into one for summary judgment."  However, it was not necessary to convert

---

[14]     As the Court noted *supra*, it will not consider the IRS's arguments based on evidence outside of the Complaint.  The IRS also briefly contends that "any contention that prolonged refusal to pay an obligation violates § 362(a)(3) would render § 362(a)(7) entirely superfluous."  Although there may be some overlap in the limited circumstances where the control is for the purpose of effecting a setoff, the Court does not perceive this as a reason to give 362(a)(3) a narrow reading in the many circumstances where a setoff is not at issue.  *See Delpit v. Commissioner, Internal Revenue Serv.*, 18 F.3d 768, 772 (9th Cir. 1994) (explaining that "[s]ubstantial overlap is common among the automatic stay provisions of Section 362(a) [and] reflects Congress' intent to describe every conceivable action that might impinge on the debtor's 'breathing spell,' even though such an approach might result in some redundancy").

13

the motion into a summary judgment motion to consider the plan.  First, whether or not the chapter 13 plan is part of the Complaint it is a public court pleading from a related proceeding that can be considered with a motion to dismiss.  *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (holding that "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" may be considered in a 12(b)(6) motion (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997))); *Quincy Mall, Inc. v. Parisian, Inc.*, 27 Fed. Appx. 631, 636 (7th Cir. Nov. 16, 2001) ("In reviewing a motion to dismiss, we may look to matters of public record outside the pleadings, including the public court documents filed in the bankruptcy proceedings."); *Rose v. Bev. Health & Rehab. Servs., Inc.*, 356 B.R. 18, 22 (E.D. Cal. 2006) (considering documents filed in a bankruptcy case to resolve a 12(b)(6) motion); *EEOC v. Apria Healthcare Group, Inc.*, 222 F.R.D. 608, 610 n.1 (E.D. Mo. 2004) (considering chapter 13 petition as a public record which may be considered); *Bohanan v. Bridgestone/Firestone N. Am. Tire, LLC*, 2007 U.S. Dist. LEXIS 26615, *6 (M.D. Tenn. Apr. 10, 2007) (considering chapter 13 petition and plan "without converting Defendants' motion into one for summary judgment").  Second, the chapter 13 plan is an integral part of the Debtors' complaint as it is mentioned at least eight times.  *See Munoz v. Sovereign Bank*, 2006 U.S. Dist. LEXIS 66987, *2 (E.D. Pa. Sept. 18, 2006) (considering pleadings from bankruptcy proceeding that were "integral to or explicitly relied upon" in the complaint).

However, the Bankruptcy Court need only consider the chapter 13 plan if that plan is actually dispositive of the estate's rights in postconfirmation property and earnings.  The issue of rights in property acquired after confirmation of the chapter 13 plan "is an issue which has troubled a number of courts in recent years."  *In re Petruccelli*, 113 B.R. 5, 7 (Bankr. S.D. Cal.

1990); *see also Cooper v. GGGR Investments, LLC*, 334 B.R. 179, 192 (E.D. Va. 2005)

(explaining that the issue "is a complicated issue which has produced a wide variance of

opinions").  The problem stems from the arguably contradictory dictates of 11 U.S.C. § 1306 and

11 U.S.C. § 1327.  *Cf., Barbosa v. Solman*, 235 F.3d 31, 36 (1st Cir. 2000) (explaining that "in

direct contraposition with the Debtors' intended interpretation [of Section 1327] is Section

1306(a) of the Bankruptcy Code").  Section 1306 provides for the property of the estate and

states as follows:

> (a) Property of the estate includes, in addition to the property specified in section
> 541 of this title [11 USCS § 541]--
>
> (1) all property of the kind specified in such section that the debtor acquires after
> the commencement of the case but before the case is closed, dismissed, or
> converted to a case under chapter 7, or 11, or 12 of this title [11 USCS §§ 701 et
> seq., 1101 et seq., or 1201 et seq.], whichever occurs first; and
>
> (2) earnings from services performed by the debtor after the commencement of
> the case but before the case is closed, dismissed, or converted to a case under
> chapter 7, 11, or 12 of this title [11 USCS §§ 701 et seq., or 1101 et seq., or 1201
> et seq.], whichever occurs first.
>
> (b) Except as provided in a confirmed plan or order confirming a plan, the debtor
> shall remain in possession of all property of the estate.

11 U.S.C. § 1306.  Section 1327 provides the following regarding the disposition of property

following confirmation of the chapter 13 plan:

> Effect of confirmation
>
> *       *       *
>
> (b) Except as otherwise provided in the plan or the order confirming the plan, the
> confirmation of a plan vests all of the property of the estate in the debtor.
>
> (c) Except as otherwise provided in the plan or in the order confirming the plan,
> the property vesting in the debtor under subsection (b) of this section is free and
> clear of any claim or interest of any creditor provided for by the plan.

15

11 U.S.C. § 1327.

Courts have perceived a contradiction in that Section 1306 provides that earnings and property are property of the estate until the case is closed, dismissed or converted, while plan confirmation occurs before any of these events and "vests all of the property of the estate in the debtor" under Section 1327.  Courts have essentially reached three different conclusions as to how these provisions interact, each with its own justifications and variants.  The first approach focuses on Section 1327 vesting "all of the property of the estate in the debtor" and concludes that the estate extinguishes at confirmation of the chapter 13 plan.  *See, e.g., In re Mason,* 45 B.R. 498, 500-01 (Bankr. D. Ore. 1984) ("Post-confirmation creditors may deal with the debtor as if no bankruptcy case were pending); *In re Petruccelli*, 113 B.R. at 17 (explaining that "revesting of all of the property of the estate occurs upon confirmation).  These courts reason that this approach serves the bankruptcy code's purpose of rehabilitating the debtor and preventing the debtor from becoming a "credit pariah."  *In re Toth*, 193 B.R. 992, 997 (Bankr. D. Ga. 1996); *In re Petruccelli*, 113 B.R. at 16.

The second approach, which has been adopted by a large number of courts in recent years, holds that all property or earnings acquired after confirmation remains with the estate.[15] These courts argue that their approach harmonizes Sections 1327 and 1306 by giving effect to the requirement that property continues to enter the estate until the case is closed, dismissed or converted.  Some courts look to the language of Section 1327 and explain that "vesting" only

---

[15]    The Court, in referring to a second approach, addresses all approaches in which all postconfirmation property vests in the estate without regard to the terms of the chapter 13 plan.  The Court recognizes that some of these courts treat preexisting property differently.

16

addresses property that existed at the time of plan confirmation.  *See, e.g., Barbosa*, 235 F.3d at 36-37 (holding that property of the estate at the time of confirmation vests in the debtors but the "Debtors' regular income and post-petition assets" remain with the estate); *Holden*, 236 B.R. at 161 (same); *In re Reynard*, 250 B.R. 241, 247 (Bankr. E.D. Va. 2000) (same); *In re Rangel*, 233 B.R. 191, 198 (Bankr. D. Mass. 1999) (same); *In re Kolenda*, 212 B.R. 851, 855 (W.D. Mich 1997) (same); *In re Fisher*, 203 B.R. 958, 964 (N.D. Ill. 1997) (same).  Other courts give "vesting" a more limited meaning of something less than full existing property rights for the debtor.  *See, e.g., Woodard v. Taco Bueno Rests., Inc.*, 2006 U.S. Dist. LEXIS 89135, *26-27 (N.D. Tex. 2006) (explaining that the "vesting" of Section 1327 only provides a future right to the property which ripens when the chapter 13 plan is completed); *In re Brensing* 337 B.R. 376, 383-84 (Bankr. D. Kan. 2006) (giving "vests" a limited meaning of possession).  The Courts adopting either version of the second approach reason that this approach serves the bankruptcy code's purposes of protecting assets and ensuring payment to creditors.  *See Woodard*, 2006 U.S. Dist. LEXIS 89135, *28-29 (explaining the congressional intent that the debtor would repay debtors during the chapter 13 period); *In re Fisher*, 203 B.R. at 963 (stating a desire to avoid any post-confirmation windfall to the debtor).

A third approach—advocated by the IRS here—focuses on the plan itself in determining whether after-acquired property is property of the estate or the debtor.  These courts ask whether post-confirmation property and earnings are "necessary" for administration of the plan.  *See Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1340 (11th Cir. 2000) (explaining that "after confirmation, only the amount required for the plan payments remained property of the estate"); *In re Heath*, 115 F.3d 521, 524 (7th Cir. 1997) (providing to the estate "only so much of

the income (or her other property) as necessary to the fulfillment of the plan"); *In re Leavell*, 190 B.R. 536, 540 (Bankr. E.D. Va. 1995) (explaining that "earnings acquired post-confirmation and necessary to implement the Chapter 13 plan remains property of the estate unless the plan states otherwise"); *In re Ziegler*, 136 B.R. 497, 502 (Bankr. N.D. Ill. 1992) (holding that postconfirmation property becomes property of the estate as needed to fund the plan).  Only property and earnings necessary to fund the plan are property of the estate while other property is property of the debtor.  *Heath*, 115 F.3d at 524; *Ziegler*, 136 B.R. at 502; *see also Muse v. Accord Human Resources, Inc.*, 129 Fed. Appx. 487, 489 (11th Cir. Apr. 18, 2005) (holding that because "there was no assertion that those assets were necessary to meet the terms of the bankruptcy plan . . . [the assets were] not part of the bankruptcy estate").

The Court first agrees with the IRS that the first approach is incorrect.  The first approach is simply without textual support, since Section 1306 and other code provisions clearly contemplate an ongoing estate.  *Reynard*, 250 B.R. at 246.  Moreover, "vesting, like confirmation, is a temporal event which occurs once in a case and does not preclude the coming into existence of property of the bankruptcy estate in futuro."  *Ziegler*, 136 B.R. at 502.  With respect to the second approach, the IRS makes a number of arguments that it should not be followed.  First, the IRS posits that this approach "totally ignore[s] Section 1322(a)(1)."  The relevant statute provides for the contents of the plan and reads as follows:

> (a) The plan shall--
>   (1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;
> *       *       *
> (b) Subject to subsections (a) and (c) of this section, the plan may--
> *       *       *
>   (9) provide for the vesting of property of the estate, on confirmation of the plan

18

or at a later time, in the debtor or in any other entity;

\*       \*       \*

(11) include any other appropriate provision not inconsistent with this title.

11 U.S.C. § 1322.

Although courts adopting the second approach may not have addressed Section 1322, the Court does not perceive that the second approach is inconsistent with Section 1322.  Section 1322(a)(1) addresses "supervision and control" of property, not whether property belongs to the estate or the debtor.  Ownership, vesting, and control are not necessarily the same thing in the chapter 13 context.  *In re Wakefield*, 312 B.R. 333, 339 (Bankr. N.D. Tex. 2004); 11 U.S.C. § 1306(b); *see also Brensing*, 337 B.R. at 383 (distinguishing between control and ownership); *Kolenda*, 212 B.R. at 854 (explaining that "'vesting' may mean more than mere possession without meaning ownership").  Indeed, from 1322(b)(9) it can be argued that "vesting" of the property of the estate in the debtor is a separate concept from supervision and control as addressed in Section 1322(a)(1).  Moreover, Section 1322(b)(9) provides an explanation for the fact that Section 1327 vests property of the estate in the debtor "[e]xcept as otherwise provided in the plan or the order confirming the plan . . . ."  Under Section 1322(b)(9), property of the estate need not vest in the debtor at confirmation and may in fact vest in another entity if so specified in the plan.

The IRS next argues that Section 704(9) of the Bankruptcy Code and 28 U.S.C. § 157(b)(2)(A) support its position.  The IRS notes that Section 704(9) requires the trustee to account for all property of the estate while 28 U.S.C. § 157(b)(2)(A) "indicates that an estate must be subject to administration by a trustee."  It then posits that the trustee is unable to perform these tasks "if funds received separately by the debtor from other sources (such as a tax

19

refund) of which the trustee my never learn is part of the estate" and if the funds can be used by the debtor for the debtors' enjoyment "with no accounting by (or to) the trustee . . . ."  The first problem with this argument is that the IRS does not attempt to explain how its preferred approach avoids these alleged problems.  The same issues may arise if the postconfirmation funds at issue are necessary for the plan under the third approach.  The second problem with this argument is that debtors could always attempt to hide property from the trustee.  Rather than assuming that debtors will hide postconfirmation property from the estate, a better solution is to enforce "a continuing duty to disclose property and earnings acquired after the commencement of the case."  *Wakefield*, 312 B.R. at 339; *see also Woodard*, 2006 U.S. Dist. LEXIS 89135, *31 (holding that "any assets the chapter 13 debtor acquires after commencement but prior to discharge must be disclosed to the bankruptcy court").

The IRS also makes a policy argument that requiring postconfirmation creditors to seek a modification of the stay to collect on property not required to fund the plan is a "trap for the unwary" creditor and risks turning the debtor into a credit pariah akin to a mental incompetent. *Citing In re Petruccelli*, 113 B.R. at 17 (adopting the first approach based in part on the credit pariah argument); *Heath*, 115 F.3d at 523 (adopting the third approach based on part on the mental incompetent argument).  However, arguments in favor of retaining postconfirmation earnings and property in the estate are more compelling.  As one court explained, " to allow post-confirmation creditors to undermine the ability of pre-confirmation creditors to be paid would place creditors who were or should have been aware of debtors' financial difficulties in a better position than those who may have extended credit before debtors' precarious financial position arose."  *Kolenda*, 212 B.R. at 855; *see also Reynard*, 250 B.R. at 249 (explaining that

20

during the pendency of the plan the "competing demands between pre-petition creditors (both secured and unsecured) and post-petition creditors can be reconciled and balanced by the court on a case by case basis in the context of a motion for relief from the automatic stay"); *Woodard*, 2006 U.S. Dist. LEXIS 89135, *27-28 (explaining that the debtor does not receive its fresh start until it has received a discharge under the plan and noting the parallel goal of ensuring that creditors are repaid to the extent of the debtor's capability).

Moreover, the third approach is not without problems.  There is no basis in the statutory text for an inquiry into what earnings or property are necessary for the plan.[16]  *See Kolenda*, 212 B.R. at 855 (explaining that "no textual basis exists for distinguishing between post-confirmation property that is 'necessary' and that which is 'not necessary'"); *Holden*, 236 B.R. at 162 (explaining that this approach "contradicts the expansive language of § 1306(a)"); *Fisher*, 203 B.R. at 962-63 (explaining that the third approach creates "a distinction among types of post-confirmation estate property where there exists no textual basis to do so"); *Ziegler*, 136 B.R. at 502 (acknowledging that the third approach's "construction of the relevant statutory sections is imperfect at best"); *Woodard*, 2006 U.S. Dist. LEXIS 89135, *17-18 (criticizing the "third approach [which] accomplishes the King Solomon solution by 'splitting the baby'" as requiring "some judicial rewriting . . . of both sections").  This lack of a clear statutory basis is evident from the fact that there is no real standard to determine what earnings and income are necessary to fund the plan.  *Barbosa*, 235 F.3d at 37; *see also Holden*, 236 B.R. at 162 (explaining that "it

---

[16]     Indeed, the Bankruptcy Court for the Southern District of Georgia read the *Telfair* case from the Eleventh Circuit, which is often cited in support of the third approach, as not applying to property obtained after confirmation.  *In re Harvey*, 356 B.R. 557, 565 (Bankr. S.D. Ga. 2006).

is not entirely clear what becomes property of the estate" under the third approach); *Reynard*, 250 B.R. at 248 (querying which property or wages are necessary to fund a plan).

Accordingly, the Court agrees with the growing majority of other courts to address the issue that property acquired after confirmation of the chapter 13 plan is property of the estate. This approach is the only approach that is consistent with the statutory language and the purposes of the bankruptcy code.  Because the tax refund was property of the estate as a matter of law, the motion to dismiss of the IRS with respect to the estate property issue should have been denied, but on a different basis than that adopted by the Bankruptcy Court.  Having addressed all of the government's arguments with respect to 362(a)(3), the Court affirms the Bankruptcy Court's denial of the motion to dismiss of the IRS.

Section 362(a)(6)

The Bankruptcy Court also declined to grant the government's motion to dismiss the Section 362(a)(6) claim.  In denying the motion, it again declined to give *Strumpf* an expansive reading that would essentially exempt one owing money to a debtor from violation of the stay.  It noted conflicting authority as to whether the IRS automated freeze violates Section 362(a)(6) and held that the Debtors stated a claim.  The Court agrees.

The IRS states at a number of points that conclusory allegations of a complaint need not be accepted in deciding a motion to dismiss.  Although the Court does not disagree, it concurs with the Bankruptcy Court that the IRS has essentially provided its own characterization of Debtors' allegations.  As the Court noted above, the Debtors have provided extensive allegations of persistent and ongoing conduct based on specific facts and events.  The IRS cannot pull statements out of context and claim they are conclusory.  For the same reasons, the Court also

22

rejects the various arguments of the IRS that "merely turning off computer automation of processing overpayments" cannot violate 362(a)(6).  This characterization of Debtors' claims simply ignores the vast majority of their allegations regarding the freeze and its use in this case.

The IRS next points to a dictionary definition of "collect" as "to bring or gather together," "to exact from," and "to claim as due and receive payment for."  However, the Court feels a better reference is the caselaw that discusses 362(a)(6), which prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case."  11 U.S.C. § 362(a)(6).  Even the main case relied on by the IRS,[17] *In re Price*, addressed Section 362(a)(6) in a single paragraph and was based on its peculiar facts in which there was "no hint that the timing of the processing of the Debtors' refund claims was the equivalent of a setoff, freeze, or some other attempt to recover the claims of the IRS against the Debtors for the pre-petition tax years."  134 B.R. 313, 318 (Bankr. N.D. Ill. 1991).  Here, as noted by the Bankruptcy Court, there are specific allegations that the IRS stated that collection was the purpose in this case.[18]  *Cf., In re Merchant*,  958 F.2d 738, 741 (6th Cir. 1992) (explaining that

---

[17]    The Court has already rejected a broad reading of *Strumpf* as in the *Mountaineer Coal* case.  Nor will the Court consider the numerous factual arguments of the IRS for the reasons stated *supra*.

[18]    The IRS asks the Court to ignore this allegation as "provid[ing] a road map to debtors' attorneys as to how to concoct allegations about 'statements' by employees of large institutional creditors, that are impossible to overcome except in a 'he said / she said' trial on a claim for 'damages' under § 362(h)."  Whether or not the concerns of the IRS related to a "cottage industry" of debtors' attorneys are valid, the Court will not simply assume that attorneys are acting in a fraudulent manner.  To the extent that such a cottage industry exists, the Court's obligation is to enforce the law as written, not to modify the law to discourage arguably trivial lawsuits.

withholding a debtor's transcript until a prepetition debt is paid is an act to collect, assess or recover a prepetition debt).

Other cases that discuss Section 362(a)(6) in more detail demonstrate that Debtors have stated a claim.  This Section has generally been read broadly to enforce Congress's purpose of preventing harassment of debtors.  *In re Duke*, 79 F.3d 43, 45 (7th Cir. 1996).  In passing Section 362(a)(6), the Senate and House explained that the provision prevents "creditors from attempting in any way to collect a prepetition debt."[19]  H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1978), reprinted in U.S.C.C.A.N. 5836037, 6298.  However, "taken to its logical extreme, this section could be read as prohibiting all contacts between creditors and debtors . . . ."  *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000).  Thus, the Sixth Circuit has held that "a course of conduct violates § 362(a)(6) if it '(1) could reasonably be expected to have a significant impact on the debtor's determination as to whether to repay, and (2) is contrary to what a reasonable person would consider to be fair under the circumstances.'"  *Id*.  (quoting *In re Briggs*, 143 B.R. 438, 453 (E.D. Mich 1992)).  Courts have declined to read Section 362(a)(6) as limited "to those situations where creditors take positive steps to recover on their claims."  *In re Hellums*, 772 F.2d 379, 381 (7th Cir. 1985).  Here, Debtors' allegations include express statements that the IRS was attempting to collect the debt as well as long delays and refusals to

---

[19]     The IRS argues that a broad reading of Section 362(a)(6) as prohibiting eventual or planned collection is improper.  However, an attempt to collect, assess or recover is a violation of Section 362(a)(6).  *In re Hines*, 147 F.3d 1185, 1188 (9th Cir. 1998); Collier on Bankruptcy § 362.03[8].   The IRS also argues that a broad reading of Section 362(a)(6) would render other provisions of the automatic stay superfluous.  However, as the Court noted *supra*, this is common in the context of the automatic stay and is not a reason to give Section 362(a)(6) a narrow reading.

provide information regarding the overpayments.  Accordingly, the Court agrees with the

Bankruptcy Court that Debtors' allegations state a claim under the broad standards for a Section

362(a)(6) claim noted above.

**CONCLUSION**

For the foregoing reasons, the decision of the Bankruptcy Court is affirmed.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated:  6/6/07

25